<table>
<tr>
<td>UNITED STATES DISTRICT COURT<br>DISTRICT OF COLORADO<br><br>INNOSPEC INC.,<br><br>Plaintiff,<br>v.<br><br>ANDREW MCBEE; GULF CHEMICAL INTERNATIONAL CORPORATION; PETROACTIVE HOLDINGS LLC; and DOES 1-20,<br><br>Defendants.</td>
<td>▲ COURT USE ONLY ▲<br><br>Case No.<br><br>Division:<br>Courtroom:</td>
</tr>
<tr>
<td>J. Raza Lawrence (California Reg. No. 233771)<br>ZUBER LAWLER LLP<br>2029 Century Park E, Suite 400<br>Los Angeles, CA 90067<br>Phone: +1 (213) 596-5620<br>Fax: +1 (213) 596-5621<br>E-mail: rlawrence@zuberlawler.com</td>
<td></td>
</tr>
</table>

**COMPLAINT FOR:**

**(1) Misappropriation of Trade Secrets Under the U.S. Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*;**

**(2) Misappropriation of Trade Secrets Under State Law;**

**(3) Breach of Contract;**

**(4) Tortious Interference with Contract;**

**(5) Civil Conspiracy; and**

**(6) Unjust Enrichment**

**DEMAND FOR JURY TRIAL**

Plaintiff Innospec Inc. alleges:

## NATURE OF THE ACTION

1. This is a civil action for misappropriation of trade secrets owned by Plaintiff Innospec Inc. ("Innospec" or "Plaintiff"), perpetrated by Plaintiff's former employee Andrew McBee ("McBee"); Gulf Chemical International Corporation and its subsidiary PetroActive Holdings LLC; and DOES 1-20. Upon information and belief, Gulf Chemical International Corporation and PetroActive Holdings LLC (collectively referred to herein as "Gulf Chemical") operate as an integrated business enterprise under common control. After McBee's employment at Plaintiff ended, he became an employee of Gulf Chemical. Plaintiff will refer to McBee, Gulf Chemical, and DOES 1-20 collectively as "Defendants" and individually as "Defendant."

2. Plaintiff's trade secrets which have been misappropriated by McBee, Gulf Chemical, and/or DOES 1-20 (the "Trade Secrets") consist of confidential customer lists and customer data, business information, product information, technical information, pricing information, vendor information, and other confidential and proprietary information and know-how constituting trade secrets which are owned by Plaintiff.

3. Plaintiff invests substantial resources in developing and maintaining the Trade Secrets, including but not limited to the confidential and proprietary customer lists and customer-related data which constitute a key foundation of Plaintiff's business in the United States and across the globe. Like many businesses, Plaintiff could not survive in this fast-paced and competitive industry if employees could simply turn around and sell that valuable, proprietary information to a new employer as the price of employment.

4. Plaintiff has expended, and continues to expend, substantial resources protecting

the Trade Secrets, including, but not limited to, through the use of confidentiality agreements. In 2019, McBee signed such an agreement with Plaintiff before being entrusted with Plaintiff's Trade Secrets.

5. During his employment with Plaintiff, McBee participated in meetings and training sessions in Colorado where he gained access to Trade Secrets owned by Plaintiff.

6. During his employment with Plaintiff, McBee regularly accessed Plaintiff's Trade Secrets.

7. During his employment with Plaintiff, McBee reported to colleagues residing in Colorado.

8. On or about February 7, 2025, McBee resigned from Plaintiff's employ. Upon information and belief, McBee accepted employment with Gulf Chemical in or around March 2025. In or around April 2025, McBee published a post on his LinkedIn profile featuring the following statement: "I'm happy to share that I'm starting a new position as Director of Fuel Additive & Chemical Sales at PetroActive / GCI!" *See* https://www.linkedin.com/posts/andrew-mcbee-444b2355_im-happy-to-share-that-im-starting-a-new-activity-7313296740223201280-eYTc?utm_source=share&utm_medium=member_desktop&rcm=ACoAAAzO0LoBRA_gl3oDf6jrFImHKC6NU7BroEo. Upon information and belief, "GCI" stands for Gulf Chemical International Corporation. As of the time when the present Complaint was filed, McBee's LinkedIn profile (a) identifies McBee as "Director of Sales & Marketing" at "PetroActive Holdings, LLC" (*see* https://www.linkedin.com/in/andrew-mcbee-444b2355/); and (b) states that McBee works remotely and is located in Groton, Connecticut.

9. The President of PetroActive Holdings LLC is John Nowlan. As of the time when

the present Complaint was filed, John Nowlan's LinkedIn profile identifies him as "CEO/President" of "Gulf Chemical International/PetroActive Holdings LLC." Upon information and belief, PetroActive Holdings LLC and its parent Gulf Chemical International Corporation share the same President/CEO, namely, John Nowlan.

10. Upon information and belief, PetroActive Holdings LLC operates under the control and direction of, and in close concert with, its parent Gulf Chemical International Corporation, and the two entities are closely integrated into a single business model.

11. Shortly after McBee's resignation from Plaintiff, upon information and belief, Plaintiff's customers began doing business with McBee's new employer, Gulf Chemical. Upon information and belief, this is no coincidence, but rather the harmful result of a nefarious scheme by Defendants to cause economic damage to Plaintiff.

12. Plaintiff has no objection to a new employer hiring McBee for his salesmanship and experience in the industry. But Plaintiff does object to McBee's new employer misappropriating Plaintiff's Trade Secrets. Plaintiff does object to McBee's new employer misappropriating Plaintiff's Trade Secret customer lists and customer-related data in order to improperly solicit Plaintiff's vital customers under the obvious guise of a new employee hire. Plaintiff does object to McBee's new employer misappropriating Plaintiff's Trade Secrets in order to damage Plaintiff. Plaintiff does object to McBee's new employer tortiously interfering with McBee's contractual obligations to maintain the secrecy of Plaintiff's Trade Secrets.

13. On or about March 7, 2025, Plaintiff sent cease-and-desist letters to McBee and Gulf Chemical International Corporation, in which Plaintiff made reference to McBee's contractual obligations to refrain from misappropriating Plaintiff's Trade Secrets to steal business

from Plaintiff. However, Plaintiff received no response from either McBee or Gulf Chemical.

14. Reluctantly, Plaintiff instituted this action to protect the Trade Secrets.

## PARTIES

15. Plaintiff Innospec Inc. is a Delaware corporation with a principal place of business at 8310 South Valley Highway, Ste. 350, Englewood, Colorado 80112.

16. Upon information and belief, defendant McBee is an individual currently residing in or around Groton, Connecticut. Upon information and belief, defendant Gulf Chemical International Corporation is a Texas corporation headquartered at 7700 San Felipe, Ste. 125, Houston, Texas 77063.

17. Upon information and belief, defendant PetroActive Holdings LLC is a Texas corporation also headquartered at 7700 San Felipe, Ste. 125, Houston, Texas 77063.

18. Upon information and belief, defendant PetroActive Holdings LLC is a subsidiary of defendant Gulf Chemical International Corporation.

19. Upon information and belief, Gulf Chemical conducts business both throughout the United States and internationally.

20. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-20, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of DOES 1-20 when ascertained.

21. At all relevant times in this Complaint, each defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, associate, co-conspirator, accomplice, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other defendants, and was engaged with some or all of the other defendants in a

joint enterprise for profit, and bore such other relationships to some or all of the other defendants so as to be liable for their conduct with respect to the matters alleged below.

**JURISDICTION AND VENUE**

22. This Court has subject matter jurisdiction over the present action pursuant 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

23. Additionally, this Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. §§ 1331 and 1338, as the present dispute arises by virtue of Defendants' violations of, *inter alia*, 18 U.S.C. § 1836, *et seq.* Plaintiff is the owner of Trade Secrets which have been misappropriated by Defendants. The Trade Secrets are related to products or services used in, or intended for use in, interstate or foreign commerce.

24. This Court has personal jurisdiction over Defendants because:

(a) Since 2009, Plaintiff has had its head corporate office in Colorado;

(b) Plaintiff conducts substantial business in Colorado and has many customers based in Colorado;

(c) The confidentiality agreements at issue in the present action were conceived, drafted, implemented, administered, monitored, and enforced in Colorado;

(d) McBee engaged in numerous activities in, and directed numerous activities toward, Colorado pertaining and relating to the confidentiality agreements at issue in the present action;

(e) During the summer of 2019, defendant McBee spent at least five days in the State of Colorado receiving job-related training from Plaintiff, and that training

involved access to Trade Secrets;

(f) After the end of McBee's employment at Plaintiff, McBee shipped his work laptop back to Plaintiff's offices in Colorado;

(g) Within Gulf Chemical's website, on the webpage https://www.gciusa.com/about/, the following language appears: "GCI, through its network of storage locations and dedicated logistics staff can provide product *to virtually any location around the globe*" (emphasis added);

(h) Upon information and belief, defendant Gulf Chemical does business throughout the United States, including in Colorado;

(i) Upon information and belief, Gulf Chemical solicited customers of Plaintiff using Trade Secrets that Gulf Chemical had misappropriated from Plaintiff through Gulf Chemical's nefarious collaboration and conspiracy with McBee; and

(j) Upon information and belief, Gulf Chemical hired and maintained McBee as an employee knowing of McBee's connections to Colorado;

(k) Upon information and belief, Gulf Chemical hired and maintained McBee as an employee knowing of McBee's contractual obligations to maintain the Trade Secrets of the Colorado-based Plaintiff;

(l) Defendants have committed tortious acts within the District of Colorado and/or have committed tortious acts outside the District of Colorado which have caused injury to Plaintiff within the District of Colorado;

(m) Defendants' tortious acts or omissions targeted Plaintiff, which is a resident of

the State of Colorado having its head corporate office and nerve center in Colorado;

(n) Gulf Chemical perpetrated tortious interference with a Colorado company's contract;

(o) Gulf Chemical perpetrated tortious interference with a contract conceived, drafted, implemented, administered, monitored, and enforced in Colorado and which was designed to protect a Colorado company's trade secrets;

(p) Upon information and belief, Defendants' tortious conduct, including but not limited to Defendants' tortious interference with contract, caused direct injury in Colorado, felt and suffered by a Colorado-based company (*i.e.*, Plaintiff) in Colorado, which has lost customers to Gulf Chemical because of Defendants' tortious conduct;

(q) Upon information and belief, tortious conduct occurred in Colorado, as McBee accessed Trade Secrets owned by Plaintiff while McBee was present in Colorado, and subsequently McBee misappropriated Trade Secrets owned by Plaintiff and exploited them in conspiracy with Gulf Chemical;

(r) Upon information and belief, Gulf Chemical has aimed its tortious conduct at Colorado by seeking to steal Plaintiff's Trade Secrets through a former employee of a Colorado-based company (*i.e.*, Plaintiff), and by intentionally undermining the former employee's contractual obligations to the Colorado-based company (*i.e.*, Plaintiff);

(s) Upon information and belief, Gulf Chemical, as an out-of-state competitor to

Plaintiff, purposefully established contacts with Colorado by conspiring with a former employee (*i.e.*, McBee) of a Colorado-based employer (*i.e.*, Plaintiff) to misappropriate and exploit Trade Secrets obtained illicitly from the Colorado-based employer (*i.e.*, Plaintiff) in violation of that Colorado-based employer's contractual rights;

(t) Upon information and belief, Gulf Chemical intentionally joined, and acted in furtherance of, a conspiracy after Gulf Chemical knew that its co-conspirator McBee intended to misappropriate and/or was misappropriating Trade Secrets from a Colorado-based company (*i.e.*, Plaintiff) in furtherance of the conspiracy with the goal of stealing customers and business from, and causing economic harm to, the Colorado-based company;

(u) Upon information and belief, Defendants expressly aimed their tortious conduct at Colorado such that Colorado can be said to be the focal point of the tortious activity perpetrated by Defendants;

(v) Plaintiff felt and suffered the brunt of the harm in Colorado such that Colorado can be said to be the focal point of the harm suffered by Plaintiff as a result of Defendant's improper, wrongful, and tortious conduct;

(w) Colorado has a protectable interest in providing a forum in which Colorado residents such as Plaintiff can seek redress for injuries caused by nonresident actors, and for this reason, among other reasons, Colorado has an interest in protecting resident Plaintiff's forum in which to seek redress for the claims arising out of nonresident Defendants' improper, wrongful, and tortious acts

against Plaintiff; and

(x) Plaintiff has pertinent witnesses and documents in Colorado, as Plaintiff's head corporate office is located in Colorado.

25. This Court also has supplemental jurisdiction over Plaintiff's non-federal claims pursuant to 28 U.S.C. § 1367, because they are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

26. Venue is proper in the U.S. District Court for the District of Colorado because it is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," in the words of 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the District of Colorado, and, moreover, a substantial part of property that is the subject of the action is situated within the District of Colorado:

(a) During McBee's period of employment at Plaintiff, McBee accessed Trade Secrets which were or had been stored digitally on servers that were located in the State of Colorado;

(b) The confidentiality agreements at issue in the present action were conceived, drafted, implemented, administered, monitored, and enforced in Colorado;

(c) Plaintiff has its head corporate office and nerve center in Colorado;

(d) Plaintiff conducts substantial business in Colorado;

(e) In the State of Colorado, McBee received crucial training from Plaintiff, and during such training, Plaintiff shared Trade Secrets with McBee and gave McBee access to Trade Secrets;

(f) During McBee's period of employment at Plaintiff, the colleague to whom McBee directly reported was someone who resided in the State of Colorado;

(g) During McBee's period of employment at Plaintiff, McBee attended key meetings in the State of Colorado within the context of his employment at Plaintiff, and such meetings were related to Trade Secrets;

(h) During McBee's period of employment at Plaintiff, the majority of McBee's in-person meetings with the colleague to whom McBee directly reported took place in the State of Colorado;

(i) During McBee's period of employment at Innospec, McBee participated in in-person marketing-related events which were physically located and run in the State of Colorado by Plaintiff;

(j) As an employee of Plaintiff, McBee was obligated to perform duties which had the purpose of bringing benefit to Plaintiff in Colorado;

(k) During McBee's period of employment at Plaintiff, McBee accessed Trade Secrets which were or had been stored digitally on servers that were located in the State of Colorado;

(l) Within Gulf Chemical's website, on the webpage https://www.gciusa.com/about/, the following language appears: "GCI, through its network of storage locations and dedicated logistics staff can provide product *to virtually any location around the globe*" (emphasis added);

(m) Upon information and belief, defendant Gulf Chemical conducts substantial business in Colorado;

(n) Plaintiff's Trade Secrets contain data regarding Colorado customers and Colorado business; and

(o) After the end of McBee's employment at Plaintiff, McBee shipped his work laptop back to Plaintiff's offices in Colorado.

## FACTS COMMON TO ALL CAUSES OF ACTION

27. Plaintiff is a specialty chemicals company which is headquartered in Colorado and which operates worldwide.

28. Plaintiff is a successful and well-known business with many years of accumulated technical expertise and know-how and a reputation for excellence in its industry.

29. Plaintiff owns, maintains, and safeguards closely-held confidential and proprietary information, including but not limited to documents containing closely-held confidential and proprietary information.

30. Plaintiff has engaged in reasonable efforts to maintain the confidentiality and security of the Trade Secrets. Plaintiff has taken measures to prevent the Trade Secrets from becoming available to persons other than those selected by Plaintiff to have access thereto for limited purposes.

31. The Trade Secrets are not readily ascertainable or generally known in the public.

32. Password systems protect the Trade Secrets. Moreover, those password systems require users to periodically change their passwords, thereby enhancing security even further.

33. Contractual obligations to maintain secrecy protect the Trade Secrets.

34. Employees and independent contractors of Plaintiff are contractually-bound to adhere to information security rules which protect Trade Secrets.

35. With regard to Trade Secrets, Plaintiff does not permit access to employees or independent contractors lacking a need to know.

36. The Trade Secrets, and their secrecy, afford Plaintiff an economic advantage over Plaintiff's competitors.

37. Among the Trade Secrets were:

(a) confidential and proprietary customer lists (featuring lists of names and contact information such as addresses, telephone numbers, and email addresses);

(b) confidential and proprietary information about specific customer preferences;

(c) confidential and proprietary information about past sales to specific customers, as well as specific products sold to specific customers;

(d) confidential and proprietary information comprising customer-specific pricing reports and data;

(e) confidential and proprietary information comprising customer-specific technical reports and data, featuring technical testing data and historical testing results relating to specific customers;

(f) confidential and proprietary information about historical bid submittals and related data;

(g) confidential and proprietary information about logistics and logistics-related processes and methods;

(h) confidential and proprietary information about transportation partners and related cost data;

(i) confidential and proprietary technical information and know-how pertaining to chemical blending components and practical applications;

(j) confidential and proprietary technical information about chemical substances utilized in particular applications for certain customers;

(k) confidential and proprietary information and know-how pertaining to sites, methods, and processes associated with manufacturing, chemical blending, and transloading;

(l) confidential and proprietary information pertaining to manufacturing partners, blending partners, and transloading partners;

(m) confidential and proprietary information and know-how pertaining to methods relating to the distribution of products to customers;

(n) confidential and proprietary information and know-how pertaining to technical specifications and information about products, as well as product-specific technical reports and data;

(o) confidential and proprietary information comprising products, product intelligence, product price lists, and other product pricing information, and product-related training and training materials;

(p) confidential and proprietary information comprising product pricing formulas used for the purpose of product price adjustments;

(q) confidential and proprietary information pertaining to finished-product raw-material drivers;

(r) confidential and proprietary information comprising product cost and source data;

(s) confidential and proprietary information comprised of business strategy and business plans;

(t) confidential and proprietary information comprised of financial data;

(u) confidential and proprietary information comprised of information about vendors and vendor costs; and

(v) confidential and proprietary information comprised of technical informational training presentations specific to certain products.

38. On June 14, 2019, Defendant McBee executed a first Confidentiality, IP Assignment, and Non-Solicit Agreement (the "First Confidentiality Agreement") with Plaintiff, a true and correct copy of which is attached hereto as **Exhibit 1.**

39. On July 30, 2019, Defendant McBee executed a second Confidentiality, IP Assignment, Non-Solicit Agreement (the "Second Confidentiality Agreement") with Plaintiff, a true and correct copy of which is attached hereto as **Exhibit 2.**

40. In the First Confidentiality Agreement and the Second Confidentiality Agreement (collectively, the "Confidentiality Agreements"), at § 1, the following language appears: "In reliance upon the promises made by me in this Agreement, the Company will provide me with access to Confidential Information (including trade secrets) related to my position...."

41. Under the Confidentiality Agreements, McBee has a contractual obligation to, *inter alia*, keep in confidence and trust, and refrain from disclosing, Plaintiff's confidential information including trade secrets. *See* Confidentiality Agreements, § 2(c).

42. In the Confidentiality Agreements, McBee agreed that during and after his employment with Plaintiff, he had duties to maintain in confidence and trust all "Confidential

Information" as that term was defined in the Confidentiality Agreements, including, *inter alia*, internal business procedures and business plans; customer and marketing information; and customer data including customer lists, names of existing, past, or prospective customers and their representatives. *See* Confidentiality Agreements, §§ 2(a) and (c).

43. Section 4 of the Confidentiality Agreements contains provisions designed "to protect the Company's Confidential Information (including trade secrets) and key business relationships...."

44. Under Section 4 of the First Confidentiality Agreement, in order to protect Plaintiff's confidential information including trade secrets, McBee agreed that, for a period of one year after the end of McBee's employment at Plaintiff, McBee was contractually prohibited from, *inter alia*, using Plaintiff's confidential information in order to solicit Plaintiff's customers to terminate their business with Plaintiff or otherwise negatively change their relationship with Plaintiff or to do business with a competitor of Plaintiff.

45. Under Section 4 of the Second Confidentiality Agreement, for a period of one year after the end of McBee's employment at Plaintiff, McBee was contractually prohibited from, *inter alia*, soliciting, or attempting to solicit, for the purpose of doing any business that would compete with Plaintiff's business, a customer about whom McBee had access to confidential information including trade secrets during the last two years of McBee's employment at Plaintiff.

46. The Confidentiality Agreements were conceived, drafted, implemented, administered, monitored, and enforced from Plaintiff's Colorado headquarters, with compliance oversight conducted by Colorado-based personnel who had access to the systems containing the Trade Secrets.

47. For approximately six years, McBee was an employee at Plaintiff, where McBee was a highly-compensated professional. In McBee's professional role at Plaintiff, McBee regularly made decisions and had a high level of autonomy. Among the types of decisions that McBee was entrusted to make, exercising his own judgment in good faith, in the ordinary course of his job responsibilities, was the day-to-day determination of when it was necessary to access and utilize Plaintiff's Trade Secret customer lists in order to successfully perform and fulfill McBee's job responsibilities at Plaintiff.

48. On August 13, 2024, Plaintiff wrote McBee a letter stating that the last day of McBee's employment at Plaintiff would be January 31, 2025. Plaintiff was going to hire a replacement for McBee, but the individual that Plaintiff was going to hire had a personal issue which was delaying that person's onboarding at Plaintiff. On January 9, 2025, Plaintiff wrote a second letter to McBee stating that Plaintiff would extend McBee's employment until March 2025.

49. On or about February 7, 2025, McBee resigned from Plaintiff's employment and, soon thereafter, began employment with Gulf Chemical.

50. Since McBee's resignation from Plaintiff, several of Plaintiff's customers have walked away from Plaintiff and instead commenced doing business with McBee's new employer, Gulf Chemical.

51. Upon information and belief, Defendants have solicited, and are continuing to solicit, Plaintiff's customers while misappropriating Plaintiff's valuable Trade Secrets, including but not limited to Plaintiff's valuable customer list Trade Secrets, which were explicitly protected by the Confidentiality Agreements.

52. Upon information and belief, since the end of McBee's employment at Plaintiff,

McBee has violated his contractual duties to Plaintiff by soliciting customers from Plaintiff's Trade Secret customers lists.

53. Upon information and belief, McBee also violated his contractual duties to Plaintiff near the end of McBee's period of employment at Plaintiff.

54. Upon information and belief, there have been multiple instances of McBee being in violation of his contractual duties to Plaintiff.

55. During McBee's period of employment at Plaintiff, there was a highly sensitive and highly confidential project that McBee gained access to. As a result, McBee gained highly sensitive and highly confidential business intelligence Trade Secrets in relation to the aforementioned project. The aforesaid business intelligence Trade Secrets included highly sensitive and highly confidential business intelligence including but not limited to (a) the identity of a certain non-U.S. vendor of certain valuable substances; and (b) the costs charged by the aforesaid non-U.S. vendor for certain valuable substances. Upon information and belief, McBee misappropriated those critical and valuable Trade Secrets and illicitly shared them with Gulf Chemical. This promptly and directly caused Plaintiff to lose at least one customer to Gulf Chemical. Upon information and belief, in the absence of such misappropriation of Trade Secrets, it would have been impossible for Gulf Chemical to compete with Plaintiff in this matter in the ordinary course of trade. The aforesaid Trade Secrets were so highly sensitive and so highly confidential, that Plaintiff took extreme measures to ensure and maintain their secrecy. Among those measures, Plaintiff restricted access to the aforesaid Trade Secrets so severely that no more than seven individuals had access to those Trade Secrets. Yet, upon information and belief, even though those Trade Secrets were highly sensitive and highly confidential, McBee still

misappropriated them, in a particularly egregious violation of McBee's contractual obligations to Plaintiff. McBee's misconduct caused harm that was suffered in Colorado by Plaintiff.

56. Upon information and belief, the foregoing constitutes just one of multiple instances of McBee misappropriating Trade Secrets and violating his contractual duties to Plaintiff.

57. As has already been noted, on August 13, 2024, Plaintiff wrote McBee a letter stating that the last day of McBee's employment at Plaintiff would be January 31, 2025. Plaintiff was going to hire a replacement for McBee, but the individual that Plaintiff was going to hire had a personal issue which was delaying that person's onboarding at Plaintiff. On January 9, 2025, Plaintiff wrote a second letter to McBee stating that Plaintiff would extend McBee's employment until March 2025. Between January 9, 2025 and the last day of McBee's period of employment at Plaintiff, McBee did not engage in any business travel at all, even though his job description requires business travel. However, even during the month of January 2025, McBee continued to access Trade Secrets including but not limited to Trade Secret customer lists. Upon information and belief, McBee accessed those materials during January 2025 because it was in furtherance of wrongful acts and/or intended acts of misappropriation of Trade Secrets in violation of McBee's contractual obligations. The harmful effects of such misconduct by McBee were felt at Plaintiff's Colorado headquarters where Plaintiff's customer relationships and business operations are managed.

58. At 12:48pm Eastern Standard Time on February 7, 2025, McBee sent an email to three colleagues at Plaintiff, and that email bore the title "McBee Resignation Letter." Within that email, McBee wrote: "It has been incredibly rewarding to grow my sales territory, explore novel uses for additives and I am proud to leave behind a strong foundation with many high value

prospects that I believe will benefit the business for years to come." However, there were actually "high value prospects" which McBee in fact did not "leave behind," instead taking illicit actions which would prevent those "high value prospects" from "benefit[ting] the business."

59. Upon information and belief, in late January 2025, McBee accessed Trade Secrets pertaining to at least one customer of Plaintiff who then became a customer of Gulf after the end of McBee's employment at Plaintiff. Upon information and belief, McBee accessed those Trade Secrets at that time in furtherance of wrongful acts and/or intended acts of misappropriation of Trade Secrets.

60. Upon information and belief, around the time of McBee's resignation from Plaintiff, McBee accessed Trade Secrets that pertained to at least one customer of Plaintiff. Upon information and belief, McBee accessed those Trade Secrets at that time in furtherance of wrongful acts and/or intended acts of misappropriation of Trade Secrets.

61. Upon information and belief, McBee accepted employment with Gulf Chemical in or around March 2025. Upon information and belief, McBee and Gulf Chemical together misappropriated and exploited Trade Secrets owned by Plaintiff for the purpose of poaching customers and business away from Plaintiff notwithstanding the contractual duties owed by McBee to Plaintiff. The harmful effects of Defendants' wrongful acts were felt at Plaintiff's Colorado headquarters, where Plaintiff's customer relationships are managed and where Plaintiff experienced the loss of business and customers to Gulf Chemical. McBee's misappropriation of Trade Secrets, combined with his and Gulf Chemical's subsequent exploitative use of Trade Secrets to solicit and poach Plaintiff's customers, constitute substantial events whose harmful effects were felt and suffered in Colorado by Plaintiff.

62. On or about March 7, 2025, Plaintiff sent cease-and-desist letters to both McBee and his new employer Gulf Chemical, apprising both parties of McBee's contractual obligations of confidentiality to Plaintiff.

63. Within the cease-and-desist letter that Plaintiff sent to McBee on or about March 7, 2025, Plaintiff demanded that McBee "immediately cease and desist from misappropriating Innospec's valuable trade secrets embodied in its customer lists to poach Innospec's clients and customers." That letter also stated: "The timing of the solicitation of Innospec's customers using Innospec's confidential information is especially concerning. Immediately after you endeavored to leave Innospec to join Gulf Chemical, relationships in which Innospec has invested enormous resources over many years cultivating and protecting suddenly ended, only to re-emerge with Gulf Chemical, the connection is clear. This correspondence is intended to formally put you, Mr. McBee, on notice of malfeasance for which you must have already been acutely aware."

64. Within the cease-and-desist letter that Plaintiff sent to Gulf Chemical International Corporation on or about March 7, 2025, Plaintiff stated: "It has come to our attention that Gulf Chemical International Corp. ("Gulf Chemical") has recently hired former Innospec employee Andrew McBee, and that together, Gulf Chemical and Mr. McBee may be using Innospec's trade secret information to poach Innospec's clients and customers. We hereby demand that Gulf Chemical, including all of its principals, officers, employees, and representatives, immediately cease and desist from misappropriating Innospec's valuable trade secrets embodied in its customer lists to poach Innospec's clients and customers." That letter also stated: "The timing of the solicitation of Innospec's customers using Innospec's confidential information is especially concerning. Mr. McBee endeavors to leave Innospec to join Gulf Chemical, and suddenly

relationships in which Innospec has invested enormous resources over many years cultivating and protecting suddenly end, only to re-emerge with Gulf Chemical, the connection is clear. Very likely Gulf Chemical similarly invests substantial resources in developing and protecting its customer lists and strategies, including having its own employees sign very similar confidentiality agreements aimed, in part, to prevent poaching in violation of Gulf Chemical's own trade secret rights. This correspondence is intended to formally put Gulf Chemical on notice of malfeasance for which Gulf Chemical must have already been acutely aware."

65. Plaintiff received no response to the cease-and-desist letter that it sent to McBee.

66. Plaintiff received no response to the cease-and-desist letter that it sent to Gulf Chemical International Corporation.

## FIRST CAUSE OF ACTION

**(Misappropriation of Trade Secrets Under the U.S. Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*)**

**(Against All Defendants)**

67. Plaintiff repeats and incorporates herein by reference all other Paragraphs contained anywhere in this Complaint as if those allegations were set out fully and explicitly herein.

68. Plaintiff is the owner of Trade Secrets which have been misappropriated by Defendants.

69. The Trade Secrets are related to products or services used in, or intended for use in, interstate or foreign commerce. Indeed, Plaintiff provides products throughout the United States and across the globe, and Defendants misappropriated Trade Secrets which directly relate to Plaintiff's interstate and international business operations and sales activities. Moreover, Trade Secrets were contained within data storage systems constituting "protected computers" as defined

under federal law, as they are used in and affect interstate and foreign commerce through Plaintiff's nationwide and international business operations.

70. Defendants have misappropriated Trade Secrets owned by Plaintiff. Those Trade Secrets consist of information, and compilations of information, which are secret and of significant value.

71. The Trade Secrets are not generally known.

72. The Trade Secrets have independent economic value from being secret.

73. The Trade Secrets have independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

74. Plaintiff has taken reasonable precautions guarding the secrecy of the Trade Secrets.

75. The Trade Secrets are protected by reasonable efforts to maintain their secrecy. The Trade Secrets are the subject of efforts that are reasonable under the circumstances to maintain the secrecy of the Trade Secrets.

76. Plaintiff has taken measures to prevent the Trade Secrets from becoming available to unauthorized persons. Plaintiff has used reasonable efforts to maintain the secrecy of the Trade Secrets.

77. The Trade Secrets are not known outside of Plaintiff’s business.

78. The Trade Secrets are not widely known inside Plaintiff’s business.

79. There is great value for Plaintiff in having the Trade Secrets remain unknown to competitors.

80. Plaintiff has devoted substantial effort and/or expense to obtain and develop the Trade Secrets.

81. It would take substantial time and/or expense for others to acquire and duplicate the Trade Secrets.

82. Each of Defendants has misappropriated Plaintiff's Trade Secrets.

83. Each of Defendants has acquired Plaintiff's Trade Secrets through improper means.

84. Each of Defendants has wrongfully used, exploited, and disclosed Plaintiff's Trade Secrets without Plaintiff's consent, even though each of Defendants knew those Trade Secrets were illicitly acquired from Plaintiff.

85. Each of Defendants has acquired, used, and/or disclosed the Trade Secret without Plaintiff's consent, and each of Defendants knew or had reason to know that the Trade Secrets were acquired by improper means.

86. Defendants' misappropriation of the Trade Secrets has harmed Plaintiff's competitive market position in interstate and foreign commerce, as Plaintiff conducts business throughout the United States and internationally. Defendants misappropriated Trade Secrets which relate to products and services used in interstate and foreign commerce. Defendants' misappropriation of Trade Secrets caused direct harm to Plaintiff at its Colorado headquarters, where Plaintiff's customer relationships are managed, where Plaintiff's business operations are coordinated, and where the harmful effects of losing customers to Gulf Chemical are felt and suffered by Plaintiff.

87. Plaintiff is entitled to damages for loss and unjust enrichment caused by Defendants' misappropriation of the Trade Secrets.

88. Upon information and belief, Plaintiff is entitled to exemplary damages and reasonable attorneys' fees, as Defendants' misappropriation has been willful and malicious, and has been accompanied by fraud, malice, and/or the willful and wanton disregard of Plaintiff's rights.

89. Plaintiff is entitled to injunctive relief against Defendants in order to prevent any further misappropriation and to protect the Trade Secrets as just and proper.

## SECOND CAUSE OF ACTION

**(Misappropriation of Trade Secrets Under State Law)**

**(Against All Defendants)**

90. Plaintiff repeats and incorporates herein by reference all other Paragraphs contained anywhere in this Complaint as if those allegations were set out fully and explicitly herein.

91. Defendants misappropriated Plaintiff's Trade Secrets.

92. Among the misappropriated Trade Secrets were listings of names, addresses, and telephone numbers. The foregoing information relates to Plaintiff's business and is secret and of value.

93. Among the misappropriated Trade Secrets was scientific information. The foregoing information relates to Plaintiff's business and is secret and of value.

94. Among the misappropriated Trade Secrets was technical information. The foregoing information relates to Plaintiff's business and is secret and of value.

95. Among the misappropriated Trade Secrets was design-related information. The foregoing information relates to Plaintiff's business and is secret and of value.

96. Among the misappropriated Trade Secrets was process information. The foregoing

information relates to Plaintiff's business and is secret and of value.

97. Among the misappropriated Trade Secrets was information about procedures. The foregoing information relates to Plaintiff's business and is secret and of value.

98. Among the misappropriated Trade Secrets were formulas. The foregoing information relates to Plaintiff's business and is secret and of value.

99. Among the misappropriated Trade Secrets was information about effectuating improvements or adjustments. The foregoing information relates to Plaintiff's business and is secret and of value.

100. Among the misappropriated Trade Secrets was confidential business information. The foregoing information relates to Plaintiff's business and is secret and of value.

101. Among the misappropriated Trade Secrets was confidential financial information. The foregoing information relates to Plaintiff's business and is secret and of value.

102. Among the misappropriated Trade Secrets was other information relating to Plaintiff's business which is secret and of value.

103. The Trade Secrets are not known outside of Plaintiff's business.

104. The Trade Secrets were the subject of efforts that were reasonable under the circumstances to maintain their secrecy.

105. Plaintiff took measures to prevent the Trade Secrets from becoming available to persons other than those selected by Plaintiff to have access thereto for limited purposes.

106. The Trade Secrets were known to, or were able to be accessed by, those inside Plaintiff's business who had a need to know the information at issue.

107. Among other protective measures, Plaintiff required all of its employees and

independent contractors to sign appropriate confidentiality agreements before being granted access to any of Plaintiff's trade secrets. The confidentiality agreements advised the employees and independent contractors of the existence of trade secrets. The confidentiality agreements included contractual obligations, imposed upon employees and independent contractors, to maintain the secrecy of Plaintiff's trade secrets.

108. McBee signed the Confidentiality Agreements. The Confidentiality Agreements advised McBee that Plaintiff had trade secrets and that McBee was obligated to maintain their secrecy.

109. Among other protective measures, Plaintiff safeguarded trade secrets through the use of password protection to prevent unauthorized access. Moreover, those password systems required users to periodically change their passwords, thereby enhancing security even further.

110. There is great savings and value to Plaintiff, as against competitors, in having the Trade Secrets. The Trade Secrets enable Plaintiff to maintain and grow a profitable business. If Plaintiff's competitors had access to the Trade Secrets, Plaintiff would lose a substantial economic advantage.

111. Plaintiff expended considerable effort and funds in obtaining and developing the Trade Secrets.

112. It would take substantial time and expense for others to acquire and duplicate Plaintiff's Trade Secrets on their own.

113. Each of Defendants acquired Plaintiff's Trade Secrets.

114. Each of Defendants used improper means to acquire knowledge of the Trade Secrets. The aforementioned improper means included theft, bribery, misrepresentation, breach or

inducement of a breach of a duty to maintain secrecy, and/or espionage through electronic or other means.

115. Each of Defendants knew or had reason to know that the Trade Secrets were acquired by improper means. The aforementioned improper means included theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, and/or espionage through electronic or other means.

116. At the time that each of Defendants undertook the disclosure and use of the Trade Secrets, they knew or had reason to know that their knowledge of the Trade Secrets was derived from or through a person who had utilized improper means to acquire it, namely, McBee. The aforementioned improper means included theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, and/or espionage through electronic or other means.

117. Defendants stole the Trade Secrets from Plaintiff.

118. McBee breached his contractual duties to Plaintiff to refrain from misappropriating or disclosing Plaintiff's Trade Secrets.

119. Upon information and belief, Gulf Chemical induced McBee to breach his contractual duties to maintain secrecy.

120. Upon information and belief, McBee's acquisition of Plaintiff's Trade Secrets involved espionage through electronic or other means.

121. Defendants undertook the use and disclosure of Plaintiff's Trade Secrets without Plaintiff's express or implied consent.

122. Plaintiff's Trade Secrets were disclosed without Plaintiff's consent.

123. Pursuant to McBee's contractual obligations to Plaintiff, McBee was not authorized

to access or acquire Trade Secrets for the purpose of utilizing or sharing Trade Secrets outside the context of McBee's performance of his professional responsibilities as an employee of Plaintiff for the benefit of Plaintiff. Plaintiff never consented to such misconduct.

124. Pursuant to McBee's contractual obligations to Plaintiff, McBee was not authorized to retain any of Plaintiff's Trade Secrets as of the end of McBee's employment at Plaintiff. Plaintiff never consented to such misconduct.

125. The disclosure of the Trade Secrets to Gulf Chemical, a competitor, was not authorized by Plaintiff. Plaintiff never consented to such misconduct.

126. Upon information and belief, McBee wrongfully took advantage of access that he would've never had if he had never been an employee of Plaintiff.

127. Upon information and belief, Gulf Chemical and DOES 1-20 wrongfully took advantage of access that they would've never had if McBee had never been an employee of Plaintiff.

128. McBee acquired Trade Secrets in breach of McBee's contractual duties to Plaintiff.

129. At the time each of Defendants undertook the disclosure and use of the Trade Secrets, they knew or had reason to know that their knowledge of the Trade Secrets was acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use. McBee was contractually obligated to Plaintiff to maintain the secrecy of the Trade Secrets.

130. At the time each of Defendants undertook the disclosure and use of the Trade Secrets, they knew or had reason to know that their knowledge of the Trade Secrets was derived from or through a person who owed a duty to the person seeking relief to maintain their secrecy or limit their use. McBee owed a duty to Plaintiff to maintain the secrecy of the Trade Secrets or

limit their use.

131. McBee knew he was acquiring the Trade Secrets by improper means. McBee signed the Confidentiality Agreements and was aware of their terms and their importance to Plaintiff's survival and profitability.

132. Upon information and belief, Gulf Chemical and DOES 1-20 knew they were acquiring the Trade Secrets by improper means. Upon information and belief, Gulf Chemical and DOES 1-20 were aware of McBee's contractual obligations to Plaintiff to maintain the secrecy of Plaintiff's Trade Secrets.

133. McBee and Gulf Chemical were expressly reminded of the Confidentiality Agreements, and of Plaintiff's rights in the Trade Secrets, thanks to the cease-and-desist letters which Plaintiff sent to McBee and Gulf Chemical International Corporation on or about March 7, 2025. Upon information and belief, each of Defendants then still persisted in their misappropriation of the Trade Secrets.

134. Upon information and belief, McBee improperly acquired the Trade Secrets from Plaintiff.

135. Upon information and belief, McBee improperly disclosed the Trade Secrets to Gulf Chemical and to DOES 1-20.

136. Upon information and belief, Gulf Chemical and DOES 1-20 improperly acquired the Trade Secrets from McBee.

137. Plaintiff is entitled to recover damages for Defendants' acts of misappropriation.

138. Plaintiff is entitled to damages including both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into

account in computing actual loss.

139. Upon information and belief, Defendants' acts of misappropriation were attended by circumstances of fraud, malice, and/or a willful and wanton disregard of Plaintiff's rights and feelings, and, therefore, Plaintiff is entitled to exemplary damages.

140. Upon information and belief, Defendants perpetrated willful and malicious misappropriation, and, therefore, Plaintiff is entitled to reasonable attorneys' fees.

141. Plaintiff is entitled to temporary and final injunctions including affirmative acts, on such equitable terms as the Court deems reasonable to prevent or restrain actual or threatened misappropriation of Trade Secrets by Defendants.

142. Plaintiff brings the present action for misappropriation of Trade Secrets within three years after the misappropriation was discovered or by the exercise of reasonable diligence should have been discovered.

**THIRD CAUSE OF ACTION**

**(Breach of Contract)**

**(Against Defendant McBee)**

143. Plaintiff repeats and incorporates herein by reference all other Paragraphs contained anywhere in this Complaint as if those allegations were set out fully and explicitly herein.

144. Plaintiff and McBee validly entered into the First Confidentiality Agreement.

145. Plaintiff and McBee validly entered into the Second Confidentiality Agreement.

146. McBee signed the Confidentiality Agreements.

147. Under the Confidentiality Agreements, McBee has a contractual obligation to, *inter alia*, keep in confidence and trust, and refrain from disclosing, Plaintiff's confidential information

including trade secrets. *See* Confidentiality Agreements, § 2(c). McBee has breached this contractual obligation.

148. Under the First Confidentiality Agreement, in order to protect Plaintiff's confidential information including trade secrets, McBee agreed that, for a period of one year after the end of McBee's employment at Plaintiff, McBee was contractually prohibited from, *inter alia*, using Plaintiff's confidential information in order to solicit Plaintiff's customers to terminate their business with Plaintiff or otherwise negatively change their relationship with Plaintiff or to do business with a competitor of Plaintiff. *See* First Confidentiality Agreement, § 4. McBee breached this contractual prohibition.

149. Under the Second Confidentiality Agreement, for a period of one year after the end of McBee's employment at Plaintiff, McBee was contractually prohibited from, *inter alia*, soliciting, or attempting to solicit, for the purpose of doing any business that would compete with Plaintiff's business, a customer about whom McBee had access to confidential information including trade secrets during the last two years of McBee's employment at Plaintiff. *See* Second Confidentiality Agreement, § 4. McBee breached this contractual prohibition.

150. McBee's breaches of his contractual obligations to Plaintiff have caused customers to abandon Plaintiff and become customers of Gulf Chemical instead. This has caused, and continues to cause, economic harm to Plaintiff.

151. Plaintiff (a) employed McBee; (b) compensated McBee for the performance of his agreed-upon services to Plaintiff; and (c) satisfied its contractual obligations toward McBee.

152. As a result of McBee's breach of his contractual duties to Plaintiff, Plaintiff has suffered, and will continue to suffer, irreparable harm, as well as damages in an amount to be

proven at trial.

**FOURTH CAUSE OF ACTION**

**(Tortious Interference with Contract)**

**(Against Defendants Gulf Chemical and DOES 1-20)**

153. Plaintiff repeats and incorporates herein by reference all other Paragraphs contained anywhere in this Complaint as if those allegations were set out fully and explicitly herein.

154. There was, and is, a contractual relationship between Plaintiff and McBee.

155. Plaintiff and McBee validly entered into the First Confidentiality Agreement.

156. Plaintiff and McBee validly entered into the Second Confidentiality Agreement.

157. Gulf Chemical and DOES 1-20 knew or reasonably should have known of the existence of the contractual relationship between McBee and Plaintiff. Gulf Chemical and DOES 1-20 knew or reasonably should have known of the Confidentiality Agreements.

158. Gulf Chemical and DOES 1-20 have intentionally and improperly interfered with the performance of a contract between McBee and Plaintiff by intentionally inducing or otherwise causing McBee not to perform the contract.

159. McBee breached his contract with Plaintiff.

160. Gulf Chemical's and DOES 1-20's tortious interference with contractual relations has involved a wrongful act or a legal act performed in an unlawful manner.

161. Gulf Chemical's and DOES 1-20's tortious interference with contractual relations has involved a scheme for the misappropriation of Plaintiff's Trade Secrets.

162. Gulf Chemical's and DOES 1-20's motive for perpetrating intentional interference was to misappropriate Plaintiff's own Trade Secrets for the purpose of poaching Plaintiff's own

customers and business away from Plaintiff.

163. Gulf Chemical's and DOES 1-20's conduct has interfered with legitimate and compelling economic interests of Plaintiff, in the form of the survival of Plaintiff's business, and in the form of Plaintiff's ownership of Plaintiff's own property.

164. The interests sought to be advanced by Gulf Chemical and DOES 1-20 were the unfair and illicit misappropriation of Plaintiff's property for the purpose of unfairly enriching Gulf Chemical and DOES 1-20.

165. There are no legitimate social interests in protecting one's freedom to perpetrate misappropriation of Trade Secrets.

166. There are strong and compelling social interests in protecting the contractual interests of Plaintiff to protect Plaintiff's own property and the survival of Plaintiff's own business.

167. The proximity of Gulf Chemical's and DOES 1-20's conduct was as close as can be to the interference, as Gulf Chemical and DOES 1-20 directly interfered with McBee's performance of McBee's contractual obligations to Plaintiff. Gulf Chemical and DOES 1-20 have close relations with McBee, as they have conspired with McBee to harm Plaintiff.

168. McBee had a contract with Plaintiff. Gulf Chemical's and DOES 1-20's interference with said contract has caused, and continues to cause, damages and losses to Plaintiff, such damages and losses being in the form of lost customers and lost business. Such damages and losses have been felt and suffered in Colorado by Plaintiff.

169. Plaintiff has suffered direct pecuniary losses from the breached contract. Plaintiff has also suffered consequential losses that flow from the interference, as well as harm to reputation. The breach of contract has enabled Gulf Chemical to poach customers from Plaintiff. Customers

have left Plaintiff and instead become customers of Gulf Chemical.

170. Gulf Chemical and DOES 1-20 are subject to liability to Plaintiff for the losses resulting to Plaintiff from the failure of McBee to perform the contract.

**FIFTH CAUSE OF ACTION**

**(Civil Conspiracy)**

**(Against All Defendants)**

171. Plaintiff repeats and incorporates herein by reference all other Paragraphs contained in this Complaint as if those allegations were set out fully and explicitly herein

172. Defendants had a goal to be accomplished, as well as a meeting of the minds on the object or course of action to accomplish the goal.

173. Upon information and belief, Defendants had a meeting of the minds that they aimed to poach customers and business away from Plaintiff.

174. Upon information and belief, Defendants had a meeting of the minds that they aimed to poach customers and business away from Plaintiff through the misappropriation of Trade Secrets and through McBee's breach of his contractual obligations to Plaintiff.

175. McBee perpetrated one or more unlawful overt acts in furtherance of the goal.

176. McBee misappropriated Trade Secrets.

177. McBee violated his contractual obligations to Plaintiff.

178. Gulf Chemical perpetrated one or more unlawful overt acts in furtherance of the goal.

179. Gulf Chemical misappropriated trade secrets.

180. Gulf Chemical tortiously interfered with McBee's contractual obligations to

Plaintiff.

181. Upon information and belief, DOES 1-20 perpetrated one or more unlawful overt acts in furtherance of the goal.

182. Upon information and belief, DOES 1-20 misappropriated trade secrets.

183. Upon information and belief, DOES 1-20 tortiously interfered with McBee's contractual obligations to Plaintiff.

184. As a proximate result of Defendants' activities, Plaintiff suffered damages in the forms of, *inter alia,* stolen Trade Secrets, lost customers, lost business, and damaged reputation.

185. Upon information and belief, Defendants forged an agreement to pursue their goal through unlawful means involving, *inter alia,* misappropriation of Plaintiff's Trade Secrets and tortious interference with Plaintiff's contractual relations.

186. Plaintiff has already lost at least one customer to Gulf Chemical under circumstances where it would have been impossible for Gulf Chemical to compete with Plaintiff in the ordinary course of trade *but for Trade Secrets that Gulf Chemical must have misappropriated from Plaintiff through McBee,* who misappropriated those Trade Secrets from Plaintiff in violation of McBee's contractual duties.

187. In view of all the foregoing, Defendants have perpetrated civil conspiracy against Plaintiff.

188. Plaintiff is entitled to damages and any other just and proper remedies.

## SIXTH CAUSE OF ACTION

**(Unjust Enrichment)**

**(Against Defendants Gulf Chemical and DOES 1-20)**

189. Plaintiff repeats and incorporates herein by reference all other Paragraphs contained anywhere in this Complaint as if those allegations were set out fully and explicitly herein.

190. Gulf Chemical and DOES 1-20 received a benefit at Plaintiff's expense under circumstances that would make it unjust for Gulf Chemical and DOES 1-20 to retain the benefit without commensurate compensation.

191. Upon information and belief, Gulf Chemical and DOES 1-20 received a benefit at Plaintiff's expense, namely, valuable Trade Secrets owned by Plaintiff, including but not limited to Plaintiff's valuable Trade Secret customer lists.

192. Upon information and belief, Gulf Chemical and DOES 1-20 received a benefit at Plaintiff's expense, namely, customers of Plaintiff who, as a result of the misappropriation of Trade Secrets, Gulf Chemical was able to poach from Plaintiff, to Gulf Chemical's benefit.

193. Under the circumstances of Gulf Chemical's and DOES 1-20's wrongful acts against Plaintiff, including but not limited to misappropriation of Trade Secrets and tortious interference with contract, it would be unjust for Gulf Chemical and DOES 1-20 to retain the benefits without commensurate compensation to Plaintiff.

194. Plaintiff is entitled to damages and any other just and proper remedies.

**PRAYER FOR RELIEF**

WHEREFORE, by reason of the foregoing, Plaintiff prays for the following judgment, damages, and equitable relief:

A. A preliminary and a permanent injunction enjoining Defendants, and each of them, from engaging in business with customers obtained through misappropriation of Plaintiff's trade secrets;

B. A preliminary and a permanent injunction enjoining Defendants, and each of them, from engaging in business with customers obtained through tortious interference with Plaintiff's contractual relations with McBee;

C. A Court Order compelling affirmative acts by Defendants to protect Plaintiff's trade secrets;

D. Actual damages according to proof;

E. Unjust enrichment damages according to proof;

F. A reasonable royalty;

G. Punitive and exemplary damages for willful and malicious misappropriation and for the intentional harm inflicted upon Plaintiff by Defendants;

H. Reasonable attorneys' fees and costs pursuant to the Confidentiality Agreements, § 5, and for willful and malicious misappropriation, and pursuant to any applicable law;

I. Costs of suit;

J. Pre-judgment and post-judgment interest; and

K. Any further relief the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

Respectfully submitted this 21st day of July, 2025.

ZUBER LAWLER LLP

*/s/ J.Raza Lawrence*

J. Raza Lawrence

Attorneys for Innospec, Inc.

*Printed copy with original signature available for inspection at the office of Zuber Lawler LLP*